CLAYTON SHANK and BERTHEL SHANK, appellees, v. NOAH D. WILHITE, appellant.

No. 51332.

(Reported in 129 N.W.2d 662)

JULY 16, 1964.

Herrick, Langdon, Sandblom & Belin, of Des Moines, for appellant.

Steward, Crouch & Hopkins, of Des Moines, for appellees.

PETERSON, J.—This is an action for damages arising out of a collision between a motorcycle driven by plaintiff Clayton Shank and an automobile driven by defendant, which collision occurred at Grand Avenue and Thirty-first Street, Des Moines, at approximately 7:30 p.m., on June 7, 1960. Jury rendered verdict in favor of plaintiff for $20,000. Defendant has appealed.

We will denominate Clayton as plaintiff. His father was added only as to payment of doctor and hospital bills. When the case was tried Clayton was of age, and the court instructed the jury to place all items in one verdict, if they decided for plaintiff.

I. On June 7, 1960, plaintiff Clayton Shank decided to take a ride in the evening on his motorcycle. He invited his friend, Ronald Lee Hougham, to ride with him. Ronald was riding on a seat back of the driver's seat. Plaintiff proceeded west on Grand Avenue in Des Moines. He selected the northern outside driveway. Grand Avenue is a four-lane street with two lanes carrying the traffic going east and two lanes carrying the traffic going west. He stopped for a streetlight at Nineteenth Street and at that point he saw the car being driven by Mrs. Stella Nervig, who was a witness in the case. The Shank motor-

cycle and the Nervig car ran along side by side going west for part of the time and then another part of the time Clayton would be driving his motorcycle a car length or perhaps two car lengths ahead of the Nervig car.

As the Shank motorcycle came near the point where Thirty-first Street intersects Grand Avenue Clayton saw defendant from 100 to 200 feet away coming east on the eastbound lanes. Within a second or two he saw Mr. Noah D. Wilhite, the driver of the car going east, still about 100 feet away, drive across the center line between the two eastbound and the two westbound routes of travel. Mr. Wilhite was apparently headed for Thirty-first Street. He testified he planned to go north on said street to get to his home. He and Mrs. Wilhite had gone fishing about four o'clock and were returning from the fishing trip. He said he thought it was about seven o'clock when the accident happened. As soon as plaintiff saw defendant drive across the center line, apparently headed for Thirty-first Street, he put on his brakes. Investigation afterward showed skid marks for a distance of 41 feet between the point where Clayton put on his brakes and where the collision occurred.

Mr. Shank explained in his testimony how it was impossible for him under those circumstances to make a square turn into Thirty-first Street. He did testify he was looking for a place to get out in some manner, but was unable to find it. In the meantime Mr. Wilhite had turned more squarely into Thirty-first Street. As closely as we can tell from the evidence the collision occurred about five or ten feet west of the west line of Thirty-first Street and about five feet south of the north line of Grand Avenue.

The collision was so sudden and so drastic that both boys were thrown off the motorcycle. Mr. Shank was thrown up over the hood of Mr. Wilhite's car and over into the parking lane on the north side of Grand Avenue. Mr. Hougham was thrown off the motorcycle and fell down near defendant's right-hand front wheel. Mr. Shank and Mr. Hougham both testified they did not see the defendant give any signal as to turning into Thirty-first Street. Defendant testified he had put on his mechanical signaling device.

Plaintiff was seriously injured. One of his ears was almost severed from his head. The doctor sewed it up and in due course it cleared up without too much difficulty. The greatest injuries suffered by plaintiff were to his right foot and left leg. The leg was what looked like being mashed in when the doctor removed his clothing. It developed afterward he needed extensive surgery on the leg and later had to have skin grafting on an area about four by four inches. Plaintiff had very severe pains for the first few days. He was in the hospital 26 days. He was then on crutches and having some difficulty after returning home, but in due course he practically recovered from his injuries. His youth and strength stood him well in hand. He was only 18 years old at the time of the injury.

II. Appellant assigned the following errors as relied upon for reversal. The trial court erred: 1. In the provisions of instructions Nos. 9, 10, 11 and 21. 2. In submitting the issue to the jury that defendant could be negligent in failing to give a signal as to his intention to turn. 3. In failing to give defendant's requested instructions. 4. In permitting plaintiff to amend his petition in the course of the trial. 5. In overruling defendant's motion for new trial without giving attention to the excessiveness of the verdict.

III. It is important and essential that all instructions be considered together in order that the jury may get the full import of the law as given by the trial judge. In re Will of Behrend, 233 Iowa 812, 818, 10 N.W.2d 651; Tilghman v. Chicago & North Western Ry. Co., 253 Iowa 1339, 115 N.W.2d 165. In fact, this provision has not only been established and approved in many decisions, but the same precaution and instruction appears in nearly all trial court instructions. In the case at bar the provision appears in the last paragraph of instruction No. 27.

It is sufficient if the substance of requested instructions, when a trial court refuses to give them, be included in the regular instructions prepared and given to the jury by a trial court. In re Estate of Iwers, 225 Iowa 389, 280 N.W. 579; Hamdorf v. Corrie, 251 Iowa 896, 101 N.W.2d 836.

IV. Appellant urges reversal on the basis of the trial court's instructions Nos. 9, 10, 11 and 21. The court's instruction No. 9 is the usual, general and ordinary instruction with reference to control of a motor vehicle by a driver. The instruction refers to both parties and provides that if either party does not have control of his vehicle he would be guilty of negligence.

Appellant's complaint is that the court in this particular instruction made a general statement as to control without making any application of that law to the facts of the case. There are incidental references to control of the vehicles under various circumstances in a number of the instructions. The jury upon receiving instruction No. 9 with reference to control knew that it pertained specifically to the case being tried and they had fresh in their mind all the facts of the case. There could be no question in their mind when the trial court spoke of control that he referred to the two motor vehicles involved in this case. Instruction No. 9 given by the trial court was not in error and had no elements within it, nor any elements left out, which would justify reversal.

Instructions Nos. 10 and 11 were given together by the trial court. The court quoted from the Code of Iowa with reference to a person making a turn with his vehicle, and continued with instructions as to the making of an "appropriate signal" in connection with such turning. This is also the instruction stating what the signal should be when a driver is desirous of making a turn, and in the last paragraph stating that a violation of such statute by the defendant would be negligence.

In connection with consideration of instructions Nos. 10 and 11 we also desire to give attention to appellant's alleged error No. 3. In this assignment of error appellant contends the court was wrong in the manner in which it submitted said instruction. The claim was made on the basis that plaintiff knew before defendant reached the intersection as to what defendant was going to do in connection with reference to turning his vehicle.

Defendant contends there was no negligence in defendant failing to give notice by hand or mechanical device as to turning, because plaintiff saw what he was going to do. Plaintiff did not know what defendant was going to do, as shown hereinafter.

Furthermore the question could not be decided as a matter of law; it was a question of fact for the jury. Fischer v. Hawkeye Stages, 240 Iowa 1203, 37 N.W.2d 284; Scoville v. Clear Lake Bakery, 213 Iowa 534, 239 N.W. 110; Dorcas v. Aikman, 256 Iowa 308, 126 N.W.2d 298.

The difficulty with appellant's position as to this alleged error is that defendant's intention in crossing the center line of Grand Avenue and moving over into the northern or westbound section of the street was not definite nor clear. We quote questions and answers of plaintiff as to this matter.

"Q. So, at least, when the Wilhite car was 100 feet from the west curbline of 31st north of Grand, you knew it was going to make the turn, didn't you? A. Frankly, I did not know what it was doing.

"Q. It had crossed the center line? A. It had crossed the center line, but I was not aware really how it was going to make the turn."

The same statement was made by plaintiff on direct and redirect examination.

The jury could believe plaintiff with reference to this matter and in view of the above testimony the trial court was abundantly justified in giving instructions Nos. 10 and 11. It could also be properly said that appellant made no request for amplification of these instructions in the lower court and raising objections in detail here for the first time in this court has no weight. Rule 196, Rules of Civil Procedure; Simanek v. Behel, 232 Iowa 1150, 7 N.W.2d 792. On the merits of the situation we do not find in these instructions any basis for reversal of the case.

Instruction No. 21 is the one in which the trial court lists the elements of damage alleged by plaintiff and covered by his testimony. The court properly describes each element of specific damage and then proceeds to instruct the jury with reference to physical pain and permanent injury or disability. The principal complaint of appellant is that there was insufficient evidence to support the matter of permanent injury or future pain or suffering. Appellant also claims the instruction fails to limit the jury as to the various elements of damage, referring to pain and suf-

fering and permanent injury, which the jury could find under the limits of the allegations of the petition and the evidence offered.

■ There is no question but what there was evidence offered by plaintiff and by his doctors as to both pain and suffering, and at least as to some types of future pain and suffering or permanent injury. The evidence was rather slight as to permanent injury, but it was there. We will consider such question at some length, infra.

Appellant is seriously mistaken as to there being no evidence on which the trial court could submit this question to the jury. We find no basis under the form of instruction No. 21 requiring reversal.

V. Appellant makes four assignments of error under which they complain about the trial court's failure or refusal to give defendant's requested instructions Nos. 2, 3, 7 and 15.

A careful analysis of such requested instructions establishes, without doubt, that all elements contained in such requests were covered by the trial court in the instructions given to the jury. It is true that in several instances the wording is not the same, but the substance is present.

We have held where the substance of every requested instruction is covered in the instructions given to the jury it is not reversible error to refuse to give such requested instructions. Hamdorf v. Corrie, supra; Hatfield v. Iowa State Traveling Men's Assn., 180 Iowa 39, 161 N.W. 123.

■ VI. Appellant contends he is entitled to a reversal because the trial court permitted an amendment to be made to the petition in the course of the trial. The matter of allowing amendments is discretionary with the trial court. Allowance is a general rule and denial the exception. Rule 88, R. C. P.; Mooney v. Nagel, 251 Iowa 1052, 103 N.W.2d 76; Benson v. Chase Grain Storage Co., 246 Iowa 591, 67 N.W.2d 433.

■ In addition to the allowance of such amendments being discretionary with the court, would say that in many cases tried in the district court it is customary and usual for the trial court to permit amendments near the end of the trial to conform with

such proof which has been offered during the trial. We find no reversible error in this contention.

The case is affirmed.—Affirmed.

All JUSTICES concur except HAYS, J., not sitting.